IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WEST VIRGINIA by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>XTO ENERGY, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:14-CV-218 (Keeley) _____<br><br>Electronically Filed December 22, 2014 |

## COMPLAINT

The United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"); and the State of West Virginia ("the State"), by and through the West Virginia Department of Environmental Protection ("WVDEP") (collectively, "Plaintiffs"), file this Complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action commenced under Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) & (d), and under Section 22 of the West Virginia Water Pollution Control Act ("West Virginia WPCA" or "WPCA"), W. Va. Code § 22-11-22. Plaintiffs seek injunctive relief and civil penalties against Defendant XTO Energy, Inc., for violating Section 301 of the CWA, 33 U.S.C. § 1311, and Sections 6 and 8 of the WPCA, W. Va. Code §§ 22-11-6 & 22-11-8, and applicable regulations (including the State's Requirements

1

Governing Water Quality Standards, W. Va. Code R. § 47-2-1 *et seq.*), by discharging dredged or fill material into waters of the United States and waters of the State at certain locations in the State of West Virginia (the "Sites") without a permit issued pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, and without the necessary authorization under the West Virginia WPCA.

2.	In this action Plaintiffs seek: (1) to enjoin the unauthorized discharge of pollutants into waters of the United States and the State at or from the Sites; (2) to require Defendant, at its own expense and at the direction of EPA, to restore and/or mitigate the impacts caused by the allegedly unlawful activities; and (3) to require Defendant to pay civil penalties as provided in 33 U.S.C. § 1319(d) and W. Va. Code § 22-11-22.

## JURISDICTION AND VENUE

3.	This Court has jurisdiction over the subject matter of this action under CWA Section 309(b), 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345, 1355, and 1367.

4.	Venue is proper in the United States District Court for the Northern District of West Virginia under 28 U.S.C. § 1391(b) and (c), as well as Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because Defendant conducts business in this District, the subject Sites are located in this District, and the causes of action alleged herein arose in this District.

5.	Because the State of West Virginia is a party to this Complaint, it has notice of the commencement of this action as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## THE PARTIES

6.	Plaintiff United States of America, acting at the request and on behalf of the EPA, is vested with the authority to bring this action under 28 U.S.C. §§ 516 & 519, and 33 U.S.C. § 1366.

7.  Plaintiff State of West Virginia, by and through the WVDEP, is vested with the authority to bring this action under W. Va. Code §§ 5-3-2 & -3, 22-1-5, and 22-11-7 & -22.

8.  Defendant XTO Energy, Inc. is a Delaware corporation, which conducts business in the Northern District of West Virginia, with a business address of 810 Houston Street, Fort Worth, Texas.  XTO Energy, Inc. is a domestic energy company with operations focused on oil and natural gas production, including hydraulic fracturing operations in the Marcellus Shale, and has an extensive network of operations in natural gas fields in West Virginia, including more than 4000 mineral leases in the State.  XTO Energy, Inc. is a wholly-owned subsidiary of ExxonMobil, which is headquartered at 5959 Las Colinas Boulevard, Irving, Texas.

## STATUTORY BACKGROUND

**The Clean Water Act**

9.  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant," including dredged or fill material, by any person from any point source to navigable waters unless that discharge is authorized by a permit issued under CWA Section 402 or 404, 33 U.S.C. §§ 1342 & 1344.

10. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand and cellar dirt.

11. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

12. Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership, [or] association."

13. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas." In turn, 33 C.F.R. § 328.3(a)(1), (2), (5) and (7) and 40 C.F.R. § 232.2 define "waters of the United States" to include: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) all inter-state waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters or their tributaries.

14. 33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

15. Section 404(a) of the CWA, 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, U.S. Army Corps of Engineers, to issue permits for the discharge of dredged or fill material to navigable waters at specified disposal sites.

16. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301 of the CWA, 33 U.S.C. § 1311.

17. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a), and provides that any person who violates Section 301 shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

18. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. §

3701 note, 69 Fed. Reg. 7121 (February 13, 2004), and 74 Fed. Reg. 626 (January 7, 2009), 40 C.F.R. Part 19, EPA may seek civil penalties of up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.

**West Virginia Water Pollution Control Act**

19. Section 8 of the WPCA, W. Va. Code § 22-11-8, prohibits the discharge of any pollutant by any person from a point source into waters of the State of West Virginia, except, *inter alia,* in compliance with applicable water quality standards, effluent limitations, and all other requirements of the WPCA.

20. Section 3 of the WPCA, W. Va. Code § 22-11-3, defines "pollutant" to mean, *inter alia*, "industrial wastes" and "other wastes," which include "any liquid, gaseous, solid or other waste substance, or a combination thereof, resulting from or incidental to any process of industry, manufacturing, trade or business, or from or incidental to the development, processing or recovery of any natural resources" and "all other materials and substances not sewage or industrial wastes which may cause or might reasonably be expected to cause or to contribute to the pollution of any of the waters of the state."

21. Section 6 of the WPCA, W. Va. Code § 22-11-6, requires compliance with all water quality standards. West Virginia's Requirements Governing Water Quality Standards, W. Va. Code R. § 47-2-3, bar the discharge of any pollutant that "adversely alters the integrity of the waters of the State including wetlands," and further prohibits any "significant adverse impact to the chemical, physical, hydrologic, or biological components of aquatic ecosystems[.]"

22. Section 22 of the WPCA, W. Va. Code § 22-11-22, authorizes WVDEP to commence a civil action for injunctive relief to compel compliance with and enjoin violations of

any provision of the WPCA. Section 22 of the WPCA also provides that any person who violates any provision of the WPCA or any rule issued pursuant to the WPCA is subject to a civil penalty of up to $25,000 per day for each violation.

## GENERAL ALLEGATIONS

23.     Defendant is engaged in the exploration and production of natural gas in the Appalachian Basin, including through the use of hydraulic fracturing (or "fracking"). In furtherance of its natural gas extraction operations, Defendant constructed and/or operated, and/or controlled and directed the construction and operation of, numerous well pads, access roads, pipelines, surface impoundments, and other structures and appurtenances in the State of West Virginia. The construction and/or operation of the foregoing resulted in unauthorized discharges of "pollutants" as that term is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), and 40 C.F.R. § 232.2, and in Section 3 of the WPCA, W. Va. Code § 22-11-3, including dredged and/or fill material, into streams and/or wetlands at the Sites.

24.     The Sites are eight properties in West Virginia's Harrison, Marion, and Upshur Counties, where Defendant has conducted operations that resulted in the unauthorized discharge of dredged and/or fill material into waters of the United States and/or waters of the State.

25.     Beginning in the spring of 2011, EPA learned of unauthorized discharges of dredged and/or fill material to waters of the United States and of the State associated with Defendant's extraction of natural gas from the Marcellus Shale formation in West Virginia.

26.     On June 23, 2011, EPA sent an information request to Defendant pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, regarding the Coastal Site and any other sites in Pennsylvania and West Virginia where XTO is actively drilling or intends to drill.

27. On October 28, 2011, EPA sent an information request to Defendant pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, regarding the Boggess Site.

28. Between May 3, 2011, and January 19, 2012, EPA conducted inspections of Defendant's operations jointly with the U.S. Army Corps of Engineers ("Corps"), and, on occasion, the WVDEP. The group inspected three of Defendant's operations—the Coastal Site, the Fancher Site, and the Boggess Site—and identified violations at all three Sites.

29. Following the inspections at these Sites, EPA issued an Administrative Order for Compliance ("AOC") at each of the three Sites, pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a). AOCs were issued between June 23, 2011, and February 29, 2012.

30. On information and belief, Defendant conducted one or more audits of its operations in West Virginia, where it identified additional violations at its drilling sites. Two of these violations—at the Windoes Site and the Fenn Site—were disclosed to EPA on September 9, 2013, when XTO reported subsequent well pad slips at each of two Sites and confirmed that both Sites had pre-existing violations identified in the audit. EPA issued AOCs for these two sites on December 2, 2013.

31. During the period of November 5-7, 2013, EPA conducted further inspections of Defendant's operations jointly with the U.S. Army Corps of Engineers ("Corps"), the WVDEP, and, on occasion, the West Virginia Division of Natural Resources. The inspections identified violations at three additional Sites—the Gould Site, the Crim Site, and the McIntire Site—that had been disclosed by Defendant on November 4, 2013. EPA issued AOCs for these three sites on February 4, 2014.

**Coastal Site**

32. The Coastal Site is located in Marion County, WV. The Site is located adjacent to unnamed tributaries to Tevebaugh Creek. Tevebaugh Creek flows to West Fork River, and then to the Monongahela River. There are also wetlands adjacent to the unnamed tributaries to Tevebaugh Creek.

33. In August 2010, Defendant began construction on a compressor pad at the Coastal Site. In December 2010, Defendant began construction on an impoundment at the Coastal Site. In the course of its construction activities, Defendant discharged dredged or fill material into the unnamed tributaries to Tevebaugh Creek and into the wetlands adjacent to those tributaries. Defendant's discharges impacted eight such tributaries, totaling approximately 3,580 linear feet of stream impacts, and impacted approximately 0.28 acres of wetlands.

34. The unnamed tributaries to Tevebaugh Creek have a significant nexus to and/or are relatively permanent waters that flow to the West Fork River and other downstream waters, including the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, the West Fork River and the Monongahela River. Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**Fancher Site**

35. The Fancher Site is located in Marion County, WV. The Site is located adjacent to unnamed tributaries to Tevebaugh Creek. Tevebaugh Creek flows to West Fork River, and

then to the Monongahela River. There are also wetlands adjacent to the unnamed tributaries to Tevebaugh Creek.

36. In April 2011, Defendant began construction on a well pad at the Fancher Site. In the course of its construction activities, Defendant discharged dredged or fill material into the unnamed tributaries to Tevebaugh Creek and into the wetlands adjacent to those tributaries. Defendant's discharges impacted approximately 220 linear feet of stream, and approximately 0.45 acres of wetlands.

37. The unnamed tributaries to Tevebaugh Creek have a significant nexus to and/or are relatively permanent waters that flow to the West Fork River and other downstream waters, including the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, the West Fork River and the Monongahela River. Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**Boggess Site**

38. The Boggess Site is located in Harrison County, WV. The Site is located adjacent to unnamed tributaries to Tenmile Creek. Tenmile Creek flows to the Monongahela River. There are also wetlands adjacent to the unnamed tributaries to Tenmile Creek.

39. In December 2010, Defendant began construction on a well pad and access road at the Boggess Site. In the course of its construction activities, Defendant discharged dredged or fill material into the unnamed tributaries to Tenmile Creek and into the wetlands adjacent to

those tributaries. Defendant's discharges impacted two such tributaries, totaling approximately 290 linear feet of stream impacts, and impacted three wetlands, totaling approximately 0.1 acres of wetlands.

40. The unnamed tributaries to Tenmile Creek have a significant nexus to and/or are relatively permanent waters that flow to Tenmile Creek and other downstream waters, including the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, Tenmile Creek and the Monongahela River. Portions of Tenmile Creek downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**Windoes Site**

41. The Windoes Site is located in Harrison County, WV. The Site is located adjacent to unnamed tributaries to Gnatty Creek. Gnatty Creek flows to Elk Creek, which flows to the West Fork River and then to the Monongahela River. There are also wetlands adjacent to the unnamed tributaries to Gnatty Creek.

42. In or around 2009, Defendant began construction on a well pad at the Windoes Site, and began construction on improvements to an existing access road to the Windoes Site. In the course of its construction activities, Defendant discharged dredged or fill material into the unnamed tributaries to Gnatty Creek and into the wetlands adjacent to those tributaries. Defendant's discharges impacted approximately 120 linear feet of stream, and approximately 0.02 acres of wetlands.

43. The unnamed tributaries to Gnatty Creek have a significant nexus to and/or are relatively permanent waters that flow to Elk Creek and other downstream waters, including the West Fork River and the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, Elk Creek, the West Fork River, and the Monongahela River. Portions of Elk Creek downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the West Fork River. Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**Fenn Site**

44. The Fenn Site is located in Marion County, WV. The Site is located adjacent to unnamed tributaries to Little Bingamon Creek. Little Bingamon Creek flows to Bingamon Creek, and then to the West Fork River and the Monongahela River. There are also wetlands adjacent to the unnamed tributaries to Little Bingamon Creek.

45. In 2011, Defendant began construction on a well pad at the Fenn Site, and began construction on improvements to an existing access road to the Fenn Site. In the course of its construction activities, Defendant discharged dredged or fill material into the unnamed tributaries to Little Bingamon Creek and into the wetlands adjacent to those tributaries. Defendant's discharges impacted approximately 130 linear feet of stream, and approximately 0.03 acres of wetlands.

46. The unnamed tributaries to Little Bingamon Creek have a significant nexus to and/or are relatively permanent waters that flow to West Fork River and other downstream waters, including the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, the West Fork River and the Monongahela River. Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**Crim Site**

47. The Crim Site is located in Marion County, WV. The Site is located adjacent to an unnamed tributary to Tevebaugh Creek. Tevebaugh Creek flows to the West Fork River, and then to the Monongahela River. There are also wetlands adjacent to the unnamed tributary to Tevebaugh Creek.

48. In June 2009, Defendant began construction of the Crim Well Pad and an associated pipeline. In the course of its construction, Defendant discharged dredged or fill material into wetlands adjacent to the unnamed tributary to Tevebaugh Creek. Defendant's discharges impacted approximately 1.6 acres of wetlands.

49. The unnamed tributary to Tevebaugh Creek has a significant nexus to and/or is a relatively permanent water that flows to the West Fork River and other downstream waters, including the Monongahela River. The impacted wetland is adjacent to, in that it has a continuous surface connection with, and/or has a significant nexus to the tributary and to other downstream waters, including, but not limited to, the West Fork River and the Monongahela

River.  Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River.  The Monongahela River is a traditionally navigable water of the United States.

**Gould Site**

50.   The Gould Site is located in Upshur County, WV.  The Site is located adjacent to Rooting Creek and its unnamed tributaries.  Rooting Creek flows to Gnatty Creek, then to Elk Creek, then to the West Fork River, and then to the Monongahela River.  There are also wetlands adjacent to Rooting Creek.

51.   In February 2009, Defendant began construction of the first of two pads at the Gould Site.  Construction of the second pad began in August 2010.  In the course of construction, Defendant discharged dredged or fill material into the unnamed tributaries to Rooting Creek and into the wetlands adjacent to those tributaries.  Defendant's discharges impacted three such tributaries, totaling approximately 900 linear feet of stream impacts, and impacted approximately 0.76 acres of wetlands.

52.   The unnamed tributaries to Rooting Creek have a significant nexus to and/or are relatively permanent waters that flow to Elk Creek, the West Fork River and other downstream waters, including the Monongahela River.  The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to Rooting Creek and to other downstream waters, including, but not limited to, Elk Creek, the West Fork River and the Monongahela River.  Portions of Elk Creek downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the West Fork River. Portions of the West Fork River downstream from the discharges are traditionally navigable

waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

**McIntire Site**

53. The McIntire Site is located in Marion County, WV. The Site is located adjacent to Little Bingamon Creek. Little Bingamon Creek flows to Bingamon Creek, then to the West Fork River, and then to the Monongahela River. There are also wetlands adjacent to Little Bingamon Creek.

54. In April 2010, Defendant began construction of the McIntire Well Pad and access road. In the course of its construction of the access road, Defendant discharged dredged or fill material into Little Bingamon Creek, into an unnamed tributary to Little Bingamon Creek, and into wetlands adjacent to Little Bingamon Creek. Defendant's discharges impacted Little Bingamon Creek and its unnamed tributary, totaling approximately 140 linear feet of stream impacts, and impacted approximately 0.14 acres of wetlands.

55. Little Bingamon Creek and its unnamed tributary have a significant nexus to and/or are relatively permanent waters that flow to the West Fork River and other downstream waters, including the Monongahela River. The impacted wetlands are adjacent to, in that they have a continuous surface connection with, and/or have a significant nexus to those tributaries and to other downstream waters, including, but not limited to, the West Fork River and the Monongahela River. Portions of the West Fork River downstream from the discharges are traditionally navigable waters that have a continuous surface hydrological connection to the Monongahela River. The Monongahela River is a traditionally navigable water of the United States.

56. As described in Paragraphs 32-55 above, Defendant and/or persons acting on its behalf discharged pollutants into a stream or streams that are tributaries to navigable-in-fact waters.

57. The streams identified in the Paragraphs 32-55, either alone or in combination with similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of downstream waters including, but not limited to, the West Fork River, Tenmile Creek, Elk Creek, and the Monongahela River.

58. The streams identified in Paragraphs 32-55 constitute "waters of the United States" and "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and constitute "waters of this state" within the meaning of the WPCA.

59. Defendant and/or persons acting on its behalf discharged pollutants into wetlands that are and were adjacent to the stream or streams described in Paragraphs 32-55.

60. The wetlands identified in Paragraphs 32-55 have and had a continuous surface connection to the stream or streams described in Paragraph 32-55.

61. The wetlands identified in Paragraphs 32-55, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of downstream waters including, but not limited to, the West Fork River, Tenmile Creek, Elk Creek, and the Monongahela River.

62. The wetlands identified in Paragraphs 32-55 constitute "waters of the United States" and "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7) , and constitute "waters of this state" within the meaning of the WPCA.

63. Defendant failed to obtain a CWA Section 404 permit from the Secretary of the Army authorizing the discharge of dredged and/or fill material into "waters of the United States"

at the Sites, and failed to obtain authorization from the State for such discharges, in connection with the work described above.

## CLAIM FOR RELIEF

64. Plaintiffs re-allege Paragraphs 1 through 64 and incorporate those allegations by reference.

65. Defendant is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and Section 3(14) of the WPCA, W. Va. Code § 22-11-3(14).

66. Through the activities described above, Defendant and/or persons acting on its behalf discharged dredged or fill material into waters of the United States and of the State.

67. The dredged or fill material discharged includes, among other things, dirt, rock and sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6), and WPCA Sections 3(12) and 3(16), W. Va. Code §§ 22-11-3(12), (16).

68. At the Sites, Defendant and/or persons acting on its behalf used mechanized land-clearing and earth-moving equipment that resulted in the discharges. This equipment constitutes "point source[s]" as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and in Section 3(15) of the WPCA, W. Va. Code § 22-11-3(15).

69. Defendant has discharged pollutants from various point sources into streams, rivers and other waters of the United States, within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and within the meaning of the federal regulations implementing the CWA at 40 C.F.R. §§ 122.2, 232.2. Defendant has also discharged pollutants from various point sources into waters of the State within the meaning of W. Va. Code § 22-11-3(23).

70. Defendant did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, for the discharges of dredged and/or fill material into waters of the

United States, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344. In addition, Defendant discharged pollutants into waters of the State without authorization from the State and in violation of the WPCA and its implementing regulations.

71. Defendant has violated and continues to violate CWA Section 301(a), 33 U.S.C. § 1311(a), and the WPCA, by its unauthorized discharges of pollutants, specifically dredged and/or fill material, into waters of the United States and waters of the State at the Sites.

72. Each Site at which such material was discharged into waters of the United States or waters of the State constitutes a separate violation, and each day that such material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a), and the WPCA.

73. Under CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) & (d), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, 69 Fed. Reg. 7121 (February 13, 2004), and 74 Fed. Reg. 626 (January 7, 2009), 40 C.F.R. Part 19, Defendant is liable for a civil penalty of up to $37,500 per day for each violation of CWA Section 301(a), 33 U.S.C. § 1311(a). Under Section 22 of the WPCA, W. Va. Code § 22-11-22, Defendant is liable for a civil penalty of up to $25,000 per day for each violation of the WPCA.

74. Unless enjoined, Defendant's discharges are likely to continue to remain in waters of the United States and the State at the Sites, in violation of CWA Section 301, 33 U.S.C. § 1311, and the WPCA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and the State of West Virginia, respectfully request that this Court order the following relief:

      I.      That the Defendant be permanently enjoined from discharging pollutants into any waters of the United States or waters of the State except as expressly authorized by the CWA and the WPCA;

      II.      That the Defendant be enjoined to undertake measures, at Defendant's own expense and at the direction of EPA and/or WVDEP, to effect complete restoration of the waters of the United States and waters of the State at the Sites and/or to conduct off-site mitigation for irreversible environmental damage and/or temporal losses of aquatic resources, as appropriate;

      III.      That the Defendant be assessed civil penalties for each day of each violation at the Sites, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), for Defendant's violations of CWA Section 301(a), and pursuant to Section 22 of the WPCA, W. Va. Code § 22-11-22, for Defendant's violations of the WPCA;

      IV.      That the United States and the State be awarded costs and disbursements in this action; and

      V.      That this Court grant such other relief as the Court may deem just and proper.

      Respectfully submitted,

Dated: December 22, 2014      FOR THE UNITED STATES OF AMERICA:

SAM HIRSCH
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

WILLIAM J. IHLENFELD, II
United States Attorney for the
Northern District of West Virginia

/s/   Kenneth C. Amaditz
KENNETH C. AMADITZ
CHLOE H. KOLMAN
U.S. Department of Justice
Environment and Natural Resources Division

Environmental Defense Section
601 D Street NW, Suite 8000
Washington, DC 20004
Phone: (202) 514-3698 (Amaditz)
Phone: (202) 514-9277 (Kolman)
Fax:    (202) 514-8865
kenneth.amaditz@usdoj.gov
chloe.kolman@usdoj.gov

/s/   Helen Altmeyer
HELEN ALTMEYER
Assistant United States Attorney
U.S. Courthouse & Federal Bldg.
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
Phone: (304) 234-7763
helen.altmeyer@usdoj.gov

OF COUNSEL:

PAMELA J. LAZOS
Office of Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103


FOR THE STATE OF WEST VIRGINIA:

/s/   Scott Driver
SCOTT DRIVER, W.Va. Bar ID #9846
West Virginia Department of Environmental Protection
Office of Legal Services
601 57th Street SE
Charleston, WV 25304
Phone: (304) 926-0460 x 1453
Fax:    (304) 926-0461
charles.s.driver@wv.gov